U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS
ON THE COURTS DOCKET
TAWANA C. MARSHALL, CLERK

D. Michael Lynn
U.S. Bankruptcy Judge

MAY 0 5 2011

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| OUTSOURCE HOLDINGS, INC., | § | Case No.: 11-41938-dml-11 |
| | § | |
| Debtor. | § | |

## ORDER APPROVING (I) INITIAL BIDDER EXPENSE REIMBURSEMENTS, (II) AUCTION PROCEDURES, AND (III) FORM AND MANNER OF SALE NOTICE AND DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN EXAMINER

Upon the motion, dated April 3, 2011 (the "Motion"), of the debtor and debtor-in-possession in the above-captioned case (the "Debtor") for an order (the "Auction Procedures Order") (a) approving procedures for the sale and use of stock owned by the Debtor (the "Stock"), (b) scheduling a hearing to approve such sale and approving the form of notice thereof, and (c) authorizing the payment of certain expense reimbursements; and the Court having reviewed and considered the Motion, and having heard statements of counsel and the evidence presented in support of the relief requested by the Debtor in the Motion at a hearing before the Court on May 3, 2011 (the "Procedures Hearing"); and it appearing that (i) the relief requested in the Motion, to the extent granted herein, is in the best interests of the Debtor, its bankruptcy

1

estate, its stakeholders, and all other parties-in-interest; (ii) the Court has jurisdiction over this matter; (iii) the legal and factual bases set forth in the Motion and at the Procedures Hearing establish just cause for the relief granted herein; and (iv) the Debtor has provided sufficient notice of the Motion and the Procedures Hearing to all creditors and parties in interest; and after due deliberation thereon, it is hereby

ORDERED that the Auction Procedures[1] as set forth in **Exhibit "1"** annexed hereto are hereby approved in all respects; and it is further

ORDERED that the Sale Notice as set forth in **Exhibit "2"** annexed hereto is hereby approved in all respects; and it is further

ORDERED that the Sale Hearing shall be held during the hearing scheduled before this Court for June 22, 2011 at 9:30 a.m. (prevailing Fort Worth, Texas time), or as soon thereafter as counsel may be heard; and it is further

ORDERED that the Debtor shall, within three business days after entry of this Procedures Order, serve the Sale Notice and this Procedures Order, including exhibits thereto, upon (a) the United States Trustee for the Northern District of Texas, (b) all parties who have filed a request for service of notices in these cases, and (c) all creditors of the Debtor; and it is further

ORDERED that such notice as set forth in the preceding decretal paragraphs shall constitute good and sufficient notice of the Motion as it relates to the Debtor's request for entry of the Sale Order (as defined in the Motion), the Auction, and the Sale Hearing, and no other or further notice of the Motion, the Auction, and/or Sale Hearing shall be necessary or required; and it is further

---

[1] Undefined capitalized terms herein shall be ascribed the same definitions as in the Motion.

ORDERED that responses or objections, if any, to the entry of the Sale Order (as defined in the Motion), shall be filed with this Court and served, so as to be actually received no later than June 17, 2011 at 5:00 p.m. (prevailing Fort Worth, Texas time), on (a) counsel to the Debtor, Jeff P. Prostok, Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102; (b) Office of the U.S. Trustee for the Northern District of Texas, 1100 Commerce St., Room 976, Dallas, Texas 75242-1496; (c) counsel for First Bank Lubbock Bancshares, Inc. ("First Bank"), Andrew E. Jillson, Hunton & Williams, LLP, 1445 Ross Ave,. Ste. 3700, Dallas, Texas 75202; (d) counsel for Tricadia CDO Management, LLC ("Tricadia"), William C. Heuer, Duane Morris LLP, 1540 Broadway, New York, New York 10036-4086; and (e) the Examiner; and it is further

ORDERED that the Debtor shall be permitted to pay the Expense Reimbursement of up to $200,000, which amount the Court finds is reasonable and necessary for the sale or use of the Stock with the presence of a firm initial offer, if required to do so per the terms and conditions described in the Acquisition Agreement; and it is further

ORDERED that the Debtor shall promptly seek to retain Sheshunoff & Co. Investment Banking, L.P. ("Sheshunoff") as its investment banker and financial advisor to assist the Debtor in carrying out the terms of this Order and the stated purposes of the Motion, with such fees being subject to review and approval by the Court; and it is further

ORDERED that, pursuant to sections 105(a) and 1104(c) of the Bankruptcy Code, the Court hereby directs the U.S. Trustee to appoint an Examiner in this case for the following limited purpose: (i) to investigate the proposed sale transaction, the fairness of the proposed sale transaction, and the negotiation of its terms, (ii) to determine and report to the Court whether a higher or better sale can be achieved, and (iii) to participate in the sale and auction process (to

the extent an auction takes place), with the Examiner's role terminating on the date of entry of an order approving a sale. To be clear, the Examiner will not be involved in, nor will he have authority for, negotiation with Midsouth, First Bank or First Bank & Trust of Lubbock respecting the proposed stalking horse transaction. Moreover, the Debtor shall have exclusive authority respecting the acceptance of any alternative transaction, with such accepted transaction still subject to Court approval; however, Tricadia and the Examiner, and any other party in interest, retain the right to bring any alternative bids or transactions to the Court's attention if they believe those alternatives provide a better and higher return to the estate; and it is further

ORDERED that Tricadia shall submit to the U.S. Trustee and Debtor's counsel the names of up to three candidates to be considered for appointment as the Examiner, and the Debtor and First Bank may provide comments to the U.S. Trustee concerning the candidates proposed by Tricadia; and it is further

ORDERED that all parties reserve their rights to challenge any findings or recommendations made by the Examiner; and it is further

ORDERED that the Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Auction Procedures Order.

### END OF ORDER ###

# EXHIBIT "1"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 Case |
| | § | |
| OUTSOURCE HOLDINGS, INC., | § | Case No.: 11-41938-dml-11 |
| | § | |
| Debtor. | § | |

## AUCTION PROCEDURES

These auction procedures (the "Auction Procedures") set forth the process by which Outsource Holdings, Inc., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 proceeding pending before the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), will conduct an auction (the "Auction") for the sale, merger, or other use (the "Transaction") of the Debtor's ownership of 100% of the outstanding capital stock of Jefferson Bank (the "Stock").

These Auction Procedures have been approved by the Bankruptcy Court pursuant to an order dated May ___, 2011 (the "Procedures Order"). The Auction Procedures are binding upon all bidders, and the bidders will have no right to alter these Auction Procedures. Bids not submitted pursuant to the Auction Procedures will not be considered.

1.  Assets to be Sold

As of April 3, 2011 the Debtor owned 100% of the outstanding capital stock of Jefferson Bank. The Debtor plans to auction this Stock for transfer or other use through a merger, sale, or other transaction.

2.  Bidding and Stalking Horse Bidder

The Debtor provides these Auction Procedures, whereby prospective bidders may compete to submit the highest bid for the purchase or use of the Stock. These offers may be substantially similar to the terms of the Acquisition Agreement (the "Acquisition Agreement") by and between the Debtor and First Bank Lubbock Bancshares, Inc. (the "Stalking Horse Bidder"). Under the Acquisition Agreement, the Debtor will use the Stock to cause Jefferson Bank to be merged with the Stalking Horse Bidder's wholly owned subsidiary First Bank & Trust, Lubbock, Texas, in exchange for up to $11,000,000 to the Debtor. The Stalking Horse Bidder's offer is not revocable.

Further, offers may be combined with offers for some or all of Jefferson Bank's assets, such as the arrangement embodied in the Purchase and Assumption Agreement (the "Purchase and Assumption Agreement") between the Stalking Horse Bidder, its subsidiary bank, Jefferson Bank, and MidSouth Bank, N.A. Interested potential investors may obtain the Acquisition Agreement and the Purchase and Assumption Agreement from the Debtor by request or from the electronic docket maintained by the Bankruptcy Court.

1

All bidders shall be required to submit irrevocable bids for the use or sale of the Stock. There is no set format for such bids. Bids need not be based upon the Acquisition Agreement or the Purchase and Assumption Agreement. However, these bids must be provided in the form of completed and signed agreements that will be enforceable if approved by the Bankruptcy Court. If a bid is derived from the Acquisition Agreement or the Purchase and Assumption Agreement, the bidder shall also submit a redlined version showing the changes between such agreements and the agreements provided by the bidder.

In the event the Stalking Horse Bidder is not the Successful Bidder as set forth in these Auction Procedures, and does not close on the Acquisition Agreement, it will be entitled to an expense reimbursement fee in the amount of up to $200,000 (the "Expense Reimbursement Fee").

3.  Access to Information

Information relevant to the Debtor, the Stock and Jefferson Bank shall be made available to potential bidders within twenty-four (24) hours following the execution by potential bidders of a valid confidentiality agreement acceptable to the Debtor. Such information includes certain books and records, material contracts, and other financial information for due diligence investigation. To obtain a copy of a confidentiality agreement, contact the Debtor's investment banker, Sheshunoff & Co. Investment Banking, L.P. ("Sheshunoff"), Attn: Karen Kline, Director of Valuations, 2801 Via Fortuna, Suite 600, Austin, Texas 78746, kkline@smslp.com. Specific instructions for accessing the information will be provided after execution of such confidentiality agreements. Interested bidders requesting information about the qualification process, and information in connection with their due diligence, should contact Sheshunoff at the contact information listed above. If, in the Debtor's reasonable judgment, providing information to a potential bidder would not be in the best interests of the bankruptcy estate, then the Debtor may refuse to provide such bidder with access to information.

The diligence period will conclude on June 10, 2011. The Debtor will coordinate all reasonable requests for additional information and due diligence access from potential bidders.

4.  Bid Deadlines

The Debtor will consider only formal, binding, unconditional, and irrevocable bids (each, a "Bid"). All Bids must be submitted via electronic mail or such other means so that they are actually received no later than 5:00 p.m. (prevailing Fort Worth, Texas time) on June 10, 2011 (the "Bid Deadline"). Each bidder must deliver its Bid by the Bid Deadline to all of the parties listed below:

(i) the Debtor, Outsource Holdings, Inc., Attn: Doug Boyd, Director, 7806 Indiana Avenue, Lubbock, Texas 79423, dboyd@esi-estech.com;

(ii) advisors to the Debtor, Sheshunoff & Co. Investment Banking, L.P., Attn: Karen Kline, Director of Valuations, 2801 Via Fortuna, Suite 600, Austin, Texas 78746, kkline@smslp.com.;

(iii) counsel to the Debtor, Forshey & Prostok, LLP, Attn: Jeff P. Prostok 777 Main Street, Suite 1290, Fort Worth, Texas 76102, jprostok@forsheyprostok.com;

(v) the Stalking Horse Bidder, First Bank Lubbock Bancshares, Inc. Attn: Brent Burrows, CFO, 7806 Indiana Avenue, Lubbock, Texas 79423, bburrows@firstbanklubbock.com;

(vi) counsel to the Stalking Horse Bidder, Hunton & Williams, LLP, Attn: Andrew E. Jillson,1445 Ross Ave,. Ste. 3700, Dallas, TX 75202, ajillson@hunton.com; and

(vii) the Examiner to be named by the United States Trustee.

5.    Qualified Bid Requirements

Bids must contain:

(a) an executed version of the applicable transactional documents necessary to complete the transaction proposed by the Bid;

(b) if applicable, a marked or blacklined version of such transactional documents showing any changes to the corresponding form Acquisition Agreement or Purchase and Assumption Agreement;

(c) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel, and contact information for such bidder, its authorized representative, and its counsel, explaining the change, if any, from the bid of the Stalking Horse Bidder, explaining why the bid is superior to the Stalking Horse Bid, and setting forth a written description explaining the regulatory steps needed to gain approval of such Transaction and a timeline for obtaining such approval;

(d) a certified or bank check or wire transfer in an amount equal to $250,000 as a minimum good faith deposit (the "Minimum Deposit"). The Minimum Deposit shall be used to fund a portion of the purchase price provided for in the Bid if the bidder ultimately closes on the transaction. Bidders should contact Sheshunoff at the contact information listed above for wiring instructions. The Minimum Deposit of all bidders other than the Successful Bidder and the Second Best Bidder, as defined below, will be returned within 48 hours of the conclusion of the Sale Hearing. The Minimum Deposit of the Second Best Bidder will be returned within 48 hours of the closing of the Sale with the Successful Bidder;

(e) written evidence of the bidder's financial ability to pay cash to consummate the Transaction in a form satisfactory to the Debtor on or before July 15, 2011;

(f) written acknowledgement that such Bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing, or any further bidding approval;

(g) written confirmation that such Bid shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or Second Best Bidder;

(h) written evidence that the bidder has the requisite corporate or similar authority to consummate the Transaction;

(i) written evidence or a summary satisfactory to the Debtor that the bidder has consulted with applicable banking regulatory agencies concerning the bidder's ability and likelihood of receiving the regulatory approval(s) required to consummate the Transaction; and

(j) such other information as the Debtor may request.

Further, Bids must be materially better than the net consideration that would be provided by the Acquisition Agreement and Purchase and Assumption Agreement, as evaluated by the Debtor within its reasonable business judgment. A materially better offer must consist of net consideration greater than (a) the $200,000 termination fee that the Debtor will owe to the Stalking Horse Bidder if that transaction is terminated, plus (b) after taking into account the $500,000 that Jefferson Bank will owe MidSouth Bank, N.A. if the Purchase and Assumption Agreement is terminated because Jefferson Bank pursues an alternative transaction, the value of the Stalking Horse Bidder's offer of a firm $2,021,000 in cash at closing for the use of the Stock, and up to $8,979,000 in cash within three years of closing contingent on certain events, plus (c) a $200,000 bid increment to justify the additional expense and delay of holding the Auction.

Bids that comply with the foregoing shall be "Qualified Bids." Persons that comply with the foregoing shall be "Qualified Bidders." Qualified Bidders shall comply with all reasonable requests for additional information by the Debtor and its advisors regarding the Bids and the foregoing information. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtor to determine that a Bid made by such Qualified Bidder is not a Qualified Bid. The Stalking Horse Bidder shall be deemed a Qualified Bidder for purposes of these Auction Procedures.

6. <u>Selection of the Successful Bidder if Only One Qualified Bid Submitted</u>

If the only Qualified Bid submitted by the Bid Deadline is the Stalking Horse Bid, the Debtor shall not hold an Auction and instead shall seek an order from the Bankruptcy Court approving the Stalking Horse Bid at a hearing to be held on June 22, 2011 at 9:30 a.m. (prevailing Fort Worth time).

7. <u>Auction or Negotiated Private Sale Process if Two or More Qualified Bids Are Submitted</u>

If two or more timely Qualified Bids are received by the Bid Deadline, the Debtor either will conduct a public auction (the "<u>Auction</u>") or further private negotiations amongst Qualified Bidders. The Debtor will use its reasonable business judgment to determine whether an Auction is appropriate. Such determination will be based in large part on whether the Qualified Bids are capable of being objectively compared and adjusted in the context of a public auction. The Auction, if any, will take place on June 15, 2011 between the hours of 9:00 a.m. and 6:00 p.m., (prevailing Fort Worth time) ("<u>Business Hours</u>") at the offices of the Debtor's counsel, or such

later time or other place as the Debtor may provide, so long as such change is communicated reasonably in advance by the Debtor to all Qualified Bidders.

If the Debtor opts to forego the Auction and instead continue negotiations regarding a private sale with Qualified Bidders, then it will file a notice with the Bankruptcy Court stating so on or before June 13, 2011. The Debtor intends to conclude such negotiated sale process on or before June 20, 2011, and to request the Bankruptcy Court approve a Transaction or sale pursuant to the best offer obtained through such process at a hearing to be held on June 22, 2011 at 9:30 a.m. (prevailing Fort Worth time). The Debtor will file with the Bankruptcy Court the documents governing such proposed Transaction or Sale on or before June 20, 2011.

8. Auction Procedures and Transaction Issues

If an auction is conducted, only the parties who have submitted a Qualified Bid will be eligible to participate in the Auction. Only the authorized representatives of each of the Qualified Bidders, the Committee, and the Debtor (the "Auction Participants") shall be permitted to participate in the Auction. Any Qualified Bidder shall be permitted to attend the Auction in person or by telephone.

On June 13, 2011, the Debtor will announce the highest Qualified Bid submitted and the Qualified Bidder that submitted such highest Qualified Bid. The Debtor will not announce the Qualified Bids submitted by any other Qualified Bidder. The bidding at the Auction shall start at the highest Qualified Bid. At the Auction, the Qualified Bidders will bid in amounts greater than the then highest Qualified Bid by at least a minimum overbid increment equal to $100,000. Each Qualified Bidder will be permitted a fair, but limited, amount of time (no more than 15 minutes, unless otherwise agreed by the Debtor) to respond to the previous bid at the Auction.

Upon the failure of the Debtor to receive an overbid, or such other time as the Debtor may determine in its reasonable business judgment prior to the conclusion of the Auction, the Debtor may determine the "highest and best" Qualified Bid (the "Successful Bid" and the bidder making such Qualified Bid, the "Successful Bidder") and the next "highest and best" Qualified Bid (the "Second Best Bid" and the bidder making such Qualified Bid, the "Second Best Bidder"), and the price shall be identified.

The Debtor intends to close the Auction on or before 6:00 p.m. (prevailing Fort Worth, Texas time) on June 15, 2011, but reserves the right to continue the Auction beyond such time if bidding continues. The Auction Procedures set forth in this paragraph 8 are subject to amendment by Debtor, within its reasonable business judgment, upon notice to the Qualified Bidders.

The Debtor will present the Successful Bidder and the Successful Bid and the Second Best Bidder and the Second Best Bid to the Bankruptcy Court at the Final Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the sale process, including, among other things, that (i) the process leading to the selection of the Successful Bid and the Second Best Bid was conducted and the Successful Bidder and the Second Best Bidder for the Loans were selected in accordance with these Auction Procedures, (ii) the sale process was fair in substance and procedure, (iii) the Successful Bidder and the Second Best Bidder are entitled to

5

the protections of 11 U.S.C. § 363(m); and (iv) consummation of the Transaction contemplated by the Successful Bid, or if necessary the Second Best Bid, will provide the highest or otherwise best value for the Stock and is in the best interests of the Debtor and its estate.

The Qualified Bid will be binding upon the Debtor only when (i) the Qualified Bid is declared the Successful Bid at the Sale Hearing, (ii) the Bankruptcy Court has approved the Successful Bid and a final order approving such Successful Bid has been docketed, and (iii) definitive documentation has been executed in respect thereof.

9.  Final Hearing and Closing of the Transaction

The Debtor shall seek an order of the Bankruptcy Court approving the Successful Bid at a hearing to be held on June 22, 2011 at 9:30 a.m. (prevailing Fort Worth, Texas time) (the "Final Hearing"). The closing of the Transaction with the Successful Bidder shall occur on or before five business days after an order approving the Transaction becomes final and the receipt of all necessary regulatory approvals. In the event that the Successful Bidder does not close on or before such time, the Debtor shall be authorized to close with the Second Best Bidder, and the Second Best Bidder will be required to close, on or before seven business days after an order approving the Transaction becomes final.

10. Reservation of Rights

The Debtor reserves the right, upon notice to all parties that have demonstrated an interest in bidding, to (i) waive terms and conditions set forth herein with respect to any or all potential bidders; (ii) impose additional terms and conditions with respect to any or all potential bidders; (iii) extend the deadlines set forth herein; (iv) cancel the Transaction without further notice; and (v) amend the Auction Procedures as they may determine to be in the best interests of the estate or to withdraw the motion to approve the Transaction at any time with or without prejudice; provided however, that the forgoing reservation of rights shall not amend or alter the Stalking Horse Bidder's right to the Expense Reimbursement Fee.

# EXHIBIT "2"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| In re: | § | Chapter 11 Case |
|---|---|---|
| | § | |
| OUTSOURCE HOLDINGS, INC., | § | Case No.: 11-41938-dml-11 |
| | § | |
| Debtor. | § | |

## SALE NOTICE

TO ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE that on April 3, 2011, Outsource Holdings, Inc., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 proceeding pending before the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), filed a Motion with the Bankruptcy Court requesting entry of orders authorizing the Debtor to use its ownership of 100% of the outstanding capital stock of Jefferson Bank (the "Stock") to effectuate a merger, sale of the Stock, or other transaction.

PLEASE TAKE FURTHER NOTICE that unless the Debtor receives qualified, timely other offers, the transaction contemplated by the Motion will be accomplished through a private sale/merger transaction between the Debtor and First Bank Lubbock Bancshares, Inc. and its wholly owned subsidiary First Bank & Trust, Lubbock, Texas (the "Stalking Horse Bidders"). Under the proposed transaction, the Debtor will use the Stock to cause Jefferson Bank to be merged with First Bank Lubbock Bancshares, Inc's wholly owned subsidiary, First Bank & Trust, Lubbock, Texas, in exchange for up to $11,000,000 to the Debtor. The Stalking Horse Bidder's offer is not revocable.

PLEASE TAKE FURTHER NOTICE THAT pursuant to an order, dated May __, 2011 (the "Procedures Order"), and the Auction Procedures approved therein (the "Auction Procedures," attached hereto as **Exhibit "A"**), the Debtor will be soliciting competing offers through June 10, 2011. In order to participate in this sale process, interested parties must submit irrevocable "Qualified Bids" no later than 5:00 p.m. (prevailing Fort Worth, Texas time) on June 10, 2011. The Auction Procedures explain the requirements for submitting a "Qualified Bid." Any entity that wishes to submit a bid must comply in all respects with the terms and conditions established by the Auction Procedures and the Procedures Order. If the Debtor receives qualified offers that are conducive to an auction process, it will conduct an auction among the bidders who submit qualified offers on June 15, 2011 at the offices of Debtor's counsel at Forshey & Prostok, LLP, 777 Main Street, Suite 1290, Fort Worth, Texas 76102. The auction will be governed pursuant to the Auction Procedures approved by the Procedures Order. If the Debtor receives qualified offers that are not conducive to an auction process, then the Debtor will conduct a private negotiated sale process among the Qualified Bidders between June 13 and June 20, 2011.

PLEASE TAKE FURTHER NOTICE THAT, if no Qualified Bids are received, a hearing (the "Final Hearing") on the sale and use of the Stock in the sale/merger transaction between the Debtor and First Bank Lubbock Bancshares, Inc. and its wholly owned subsidiary First Bank & Trust, Lubbock, Texas will be held in the Bankruptcy Court on June 22, 2011 at 9:30 a.m. (prevailing Fort Worth, Texas time). Objections, if any, to approval of this Transaction must be made in writing, filed with the Bankruptcy Court, and served in accordance with the terms and conditions established by the Procedures Order so as to be actually received by the parties specified in the Procedures Order by **5:00 p.m. local (prevailing Fort Worth, Texas time) on June 17, 2011.**

PLEASE TAKE FURTHER NOTICE THAT, if Qualified Bids are received, a Final Hearing on the sale and use of the Stock to the winning bidder at the ensuing auction or private sale process will be conducted on June 22, 2011 at 9:30 a.m. (prevailing Fort Worth, Texas time). Objections, if any, to approval of this Transaction must be made in writing, filed with the Bankruptcy Court, and served in accordance with the terms and conditions established by the Procedures Order so as to be actually received by the parties specified in the Procedures Order by **5:00 p.m. (prevailing Fort Worth, Texas time) on June 17, 2011.**

PLEASE TAKE FURTHER NOTICE that in the absence of any timely objection, the Debtor will submit to the Court a form of order setting forth, among other things, that (i) the notice procedures of the Motion have been satisfied, (ii) no objection to the Motion was timely made or such objection has been resolved, and (iii) the Debtor may proceed with the relief requested in the Motion.

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE TO YOU OR THE OPPORTUNITY TO OBJECT.**

PLEASE TAKE FURTHER NOTICE that any entity wishing to receive a copy of the Motion or the underlying agreements should contact Debtor's counsel at Forshey & Prostok, LLP, Attn: Jeff Prostok (jprostok@forsheyprostok.com), 777 Main Street, Suite 1290, Fort Worth, Texas 76102, phone: (817) 877-8855, fax: (817) 877-4151.