U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

THE DATE OF ENTRY IS
ON THE COURT'S DOCKET
TAWANA C. MARSHALL, CLERK

D. Michael Lynn
U.S. Bankruptcy Judge

JUN 2 7 2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| OUTSOURCE HOLDINGS, INC., § | Case No. 11-41938-DML |
| a Texas Corporation, § | |
| § | |
| Debtor. § | |

ORDER APPROVING THE USE AND SALE OF DEBTOR'S INTERESTS IN
JEFFERSON BANK FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS

Upon the motion, dated April 3, 2011 (the "Motion")[1], Docket No. 2, of the debtor and debtor-in-possession (the "Debtor") in the above-captioned case (the "Bankruptcy Case") for an order (the "Sale Order") authorizing the Debtor to transfer and use its stock in Jefferson Bank (the "Stock") to cause the merger of Jefferson Bank with First Bank & Trust, Lubbock, Texas ("First Bank & Trust") pursuant to the Acquisition Agreement with First Bank & Trust and its parent First Bank Lubbock Bancshares, Inc. (the "Purchaser") dated April 3, 2011 (the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion or the Acquisition Agreement, as applicable.

"Acquisition Agreement," attached hereto as *Exhibit A*[2]) free and clear of all Liens, Claims, Encumbrances and other Interests. The Court heard statements of counsel, a report from Anthony Pacchia, the Examiner appointed herein (the "Examiner"), and evidence presented in support of the relief requested by the Debtor in the Motion at a hearing before the Court on June 27, 2011 (the "Sale Hearing"). Based on the evidence presented at the Sale Hearing, the arguments of counsel, the Examiner's report, the applicable pleadings in this Bankruptcy Case, and the applicable law, and after due deliberation thereon,

THE COURT HEREBY FINDS AND DETERMINES THAT:

**I.     Jurisdiction, Final Order, and Statutory Predicates**

A.     The transactions contemplated by the Acquisition Agreement (the "Sale") are a "sale" of the Stock for the purposes of title 11 of the United States Code (the "Bankruptcy Code") including but not limited to 11 U.S.C. § 363.

B.     The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     This order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for

---

[2] The Confidential Schedules included as part of the Acquisition Agreement approved by this Order are omitted from Exhibit "A" attached hereto

delay in the implementation of this order, and expressly directs entry of judgment as set forth herein.

D. The statutory predicates for the relief requested in the Sale Motion are §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

E. The Court entered the Order Approving (I) Initial Bidder Expense Reimbursements, (II) Auction Procedures, and (III) Form and Manner of Sale Notice and Directing the United States Trustee to Appoint an Examiner on May 5, 2011, Docket No. 41, (the "First Sales Procedures Order"). Subsequently, the Court entered the Order Granting Debtor's Unopposed Motion to Approve Amended Auction Procedures and Sale Notice, Docket No. 73, (the "Second Sale Procedures Order") on June 6, 2011. The First Sales Procedure Order and the Second Sales Procedure Order will be referred to hereafter collectively as the "Sales Procedures Order."

F. Pursuant to the Sale Procedures Order, the Debtor, with the assistance of Commerce Street Capital, LLC ("Commerce"), established a data room into which was placed information relevant to any party interested in bidding on the Debtor's assets. Upon establishing the data room, Commerce distributed information packets, circulars or "teasers" to prospects deemed by it as likely to have interest in participating in a transaction with or involving the Debtor. From that distribution, 19 of the potential bidders executed confidentiality agreements and 14 of the potential bidders accessed the data room to investigate, in varying degrees, the Debtor, its assets, and the attractiveness of pursuing a transaction. Although the Debtor's and Commerce's efforts generated interest, ultimately no party submitted a qualified bid by the deadline proscribed in the Sale Procedures Order.

G. The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

H. To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such. Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

I. In the absence of a stay pending appeal, the Purchaser will be acting in good faith pursuant to § 363(m) of the Bankruptcy Code in closing the transaction contemplated by the Acquisition Agreement at any time on or after entry of this Sale Order, and cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rule 6004(h).

## II. Notice of the Sale, Auction and the Cure Amounts

A. Pursuant to the Sale Procedures Order, the Sale Notice, which includes actual written notice of the Sale Hearing, the Auction, and the Motion, has been provided to all known interested persons and entities, including, but not limited to the following parties (the "Notice Parties"), thereby providing them with a reasonable opportunity to object or be heard with respect to such matters:

1. the United States Trustee;

2. all parties that have requested special notice pursuant to Bankruptcy Rule 2002;

3. all creditors of the Debtor; and

4. all potential bidders previously identified or otherwise known to the Debtor.

4

B. The Debtor has articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion regarding the Sale process, including, without limitation, approval and authorization to serve Sale Procedures Order.

C. The Sale Procedures Order provided all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction.

D. As evidenced by the certificates of service previously filed with the Court and in accordance with the Sale Procedures Order, proper, timely, adequate, and sufficient notice of the Motion, Auction, Sale Hearing, and Sale has been provided in accordance with §§ 102 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014. The Debtor also has complied with all obligations to provide notice of the Auction, Sale Hearing, and Sale required by the Sale Procedures Order. The notices described in paragraphs A to C above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, or the Sale is required.

E. The disclosures made by the Debtor concerning the Sale Motion, Acquisition Agreement, Auction, Sale, and Sale Hearing, including but not limited to the facts alleged in the Sale Motion and other pleadings filed with the Court, and the evidence and arguments presented and proffered at the Sale Hearing and other hearings before the Court, were good, complete and adequate.

### III. Good Faith of Purchaser

A. Purchaser is not an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code.

B. Purchaser is purchasing the Stock in good faith and is a good faith buyer within the meaning of § 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in

connection with this proceeding in that, inter alia: (a) Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Stock; (b) Purchaser complied with the provisions in the Sales Procedures Order; (c) Purchaser agreed to subject itself to the competitive bidding procedures set forth in the Sales Procedures Order; (d) Purchaser in no way induced or caused the chapter 11 filing by the Debtor; (e) all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed; (f) Purchaser has not violated § 363(n) of the Bankruptcy Code by any action or inaction; (g) the common directors, controlling stockholders, and officers that exist between Purchaser and the Debtor have not received information about the Sale and marketing process that was not otherwise available to any party interested in being a competing bidder, (h) decisions regarding the Sale and marketing process were made by the Debtor notwithstanding the existence of common directors, controlling shareholders, and officers that exist between the Purchaser and Debtor; and (i) the negotiation and execution of the Acquisition Agreement and any other agreements or instruments related thereto were at arms' length and in good faith.

## IV. Highest or Best Offer

A. Prior to selecting Purchaser as the stalking horse bidder, the Debtor solicited offers to acquire or use the Stock from a wide variety of parties. The Debtor's effort in this regard commenced in the Spring of 2010 and involved the solicitation of interest in the Debtor and/or its assets from thirty-two parties. The pre-petition marketing and sale effort resulted in MidSouth Bank, N.A. ("MidSouth") offering to acquire from Jefferson Bank, the Debtor's wholly owned subsidiary, its branch bank locations and certain other assets and to assume certain liabilities. On the basis of MidSouth's proposal and the fact that it was the only credible offer received from the solicitation effort, the Purchaser agreed to acquire the remaining assets of Jefferson Bank through merger so that Jefferson Bank would not be closed by

regulatory authorities. In addition to such solicitations, as described in I.F. above and evidence of which was presented at the Sale Hearing, the Debtor commenced a post-petition process to solicit interest from third parties in pursuing a transaction in accordance with the provisions of the Sale Procedures Order. This process, conducted in compliance with the process set forth in the Sales Procedures Order, afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase or use the Stock. The opportunity to pursue a transaction involving the Debtor and/or its assets was duly noticed and provided opportunity for a noncollusive, fair, and good faith sale process and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Stock.

B. The Acquisition Agreement constitutes the highest or best offer for the Stock, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative. The Debtor's determination that the Acquisition Agreement constitutes the highest or best offer for the Stock constitutes a valid and sound exercise of the Debtor's business judgment.

C. The Acquisition Agreement represents a fair and reasonable offer to purchase the Stock under the circumstances of this Bankruptcy Case. No other person or entity or group of entities has offered to purchase the Stock for greater economic value to the Debtor's estate than Purchaser.

D. Approval of the Sale Motion and the Acquisition Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtor, its creditors, its estate, and other parties in interest.

E. The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

V. **No Fraudulent Transfer**

A. The consideration provided by Purchaser pursuant to the Acquisition Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

VI. **Validity of Transfer**

A. The Debtor has full corporate power and authority to execute and deliver the Acquisition Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtor to consummate the transactions contemplated by the Acquisition Agreement, except as otherwise set forth in the Acquisition Agreement.

B. The transfer of the Stock to Purchaser will be as of the Closing Date a legal, valid, and effective transfer of the Stock, and vests or will vest Purchaser with all right, title, and interest of the Debtor to the Stock free and clear of all liens and Claims (as defined below) (collectively, "Liens") accruing, arising, or relating thereto any time prior to the Closing Date.

VII. **Section 363(f) Is Satisfied**

A. Purchaser would not have entered into the Acquisition Agreement and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities set forth in the Acquisition Agreement) if the sale and transfer of the Stock to Purchaser was not free and clear of all Liens of any kind or nature whatsoever or Claims, or if Purchaser would be liable, or in the future could be liable, for any of such Liens or

8

Claims, including, but not limited to, Liens or Claims in respect of the following: (1) any labor agreements; (2) all mortgages, deeds of trust, and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (4) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, Claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with the Debtor or any of its respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any environmental law(s); and (8) any theories of successor liability.

B.  The Debtor may sell the Stock free and clear of all Liens and Claims against the Debtor, its estate, and any of the Stock because, in each instance, one or more of the standards set forth in § 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens or Claims against the Debtor, its estate, or any of the Stock who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to § 363(f)(2) of the Bankruptcy Code. Those holders of such Liens or Claims who did object

9

fall within one or more of the other subsections of § 363(f) and are adequately protected by having their Liens and/or Claims, if any, in each instance against the Debtor, its estate, or any of the Stock, attach to the cash proceeds of the Sale ultimately attributable to the Stock in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

**VIII. Compelling Circumstances for an Immediate Sale**

    A.    To enhance the Debtor's level of liquidity, and to avoid loss of value to the estate, it is essential that the Sale or transfer of the Stock occur within the time constraints set forth in the Acquisition Agreement. Time is of the essence in consummating the Sale.

    B.    Given all of the circumstances of this Bankruptcy Case and the adequacy and fair value of the purchase price under the Acquisition Agreement, the proposed Sale of the Stock to Purchaser constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

    C.    The consummation of the transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, §§ 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**IX. Use of Sale Proceeds**

    A.    The Debtor shall apply the Sale Proceeds in accordance with the applicable orders of this Court in this Bankruptcy Case and provisions of the Bankruptcy Code; provided, however, that any and all Liens and Claims encumbering the Stock shall be released at Closing.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**General Provisions**

1. The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved as set forth in this Order.

2. This Court's findings of fact and conclusions of law, set forth in the Sale Procedures Order, are incorporated herein by reference.

3. All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

**Approval of the Acquisition Agreement**

4. The Acquisition Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5. Pursuant to § 363(b) of the Bankruptcy Code, the Debtor is authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of each of the Stock to Purchaser pursuant to and in accordance with the terms and conditions of the Acquisition Agreement, (ii) close the Sale as contemplated in the Acquisition Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement, and close fully the Acquisition Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Acquisition Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the

performance of the obligations as contemplated by the Acquisition Agreement and such other ancillary documents.

6. This Order shall be binding in all respects upon the Debtor, including the Debtor, its estate, all holders of equity interests in the Debtor, all holders of any Claim(s) (whether known or unknown) against the Debtor, any holders of Liens or Claims against or on all or any portion of the Stock, Purchaser and all successors and assigns of Purchaser, and any trustees subsequently appointed in the Bankruptcy Case or upon a conversion to chapter 7 under the Bankruptcy Code of the Bankruptcy Case. This Order and the Acquisition Agreement shall inure to the benefit of the Debtor, its estate and creditors, Purchaser, and their respective successors and assigns.

**Transfer of the Stock**

7. Pursuant to §§ 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer the Stock on the Closing Date. Such Stock shall be transferred to Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of such Stock and, upon the Debtor's receipt of the Purchase Price, shall be free and clear of all Liens and Claims, including, without limitation, all "claims" within the meaning of § 101(5) of the Bankruptcy Code, and all interests, encumbrances, rights of setoff, recoupment, netting and deductions ("Claims"). Upon the Closing, Purchaser shall take title to and possession of the Stock. Pursuant to § 363(f) of the Bankruptcy Code, the Sale of the Stock shall be free and clear of (a) any and all Liens; (b) any and all liabilities; and (c) any and all Claims including, without limitation, any and all claims pursuant to any successor or successor-in-interest liability theory. All Liens and/or Claims shall attach solely to the proceeds of the Sale with the same validity, priority, force, and effect that they now have as against the Stock, subject to any claims and defenses the Debtor and its estate may possess with respect

12

thereto. The Debtor shall apply the Sale Proceeds in accordance with applicable orders of this Court in this Bankruptcy Case and provisions of the Bankruptcy Code; provided, however, that any and all Liens and Claims encumbering the Stock shall be released at Closing.

8. All persons and entities holding Liens, Claims or interests in all or any portion of the Stock arising under or out of, in connection with, or in any way relating to Claims against the Debtor, the Stock, or the transfer of the Stock to Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser or its successors or assigns, their property, or the Stock, such persons' or entities' Liens or Claims against the Debtor or in and to the Stock. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be deemed by Purchaser to be necessary or desirable to release Liens or Claims on the Stock, if any, as provided for herein, as such Liens or Claims may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which the Debtor is formed or authorized to transact business or other circumstances. Upon consummation of the transactions set forth in the Acquisition Agreement, Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Lien, Claim, or encumbrance that is extinguished or otherwise released pursuant to this Order under § 363 and the related provisions of the Bankruptcy Code.

9. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Stock to Purchaser in accordance with the terms of the Acquisition Agreement and this Order.

10. All persons and entities that are in possession of some or all of the Stock on the Closing Date are directed to surrender possession of such Stock to Purchaser or its assignee at the Closing.

11. A certified copy of this Order may be filed with the appropriate clerk or other official or similar person or institution and/or recorded with the recorder or other official or similar person or institution to act to cancel any of the Liens, Claims, and other encumbrances of record.

12. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, Claims against, or interests in, all or any portion of the Stock shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to Purchaser for the purpose of documenting the release of all Liens or Claims, which the person or entity has asserted or may assert with respect to all or any portion of the Stock, the Debtor is hereby authorized and directed, and Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Stock.

13. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of

10. All persons and entities that are in possession of some or all of the Stock on the Closing Date are directed to surrender possession of such Stock to Purchaser or its assignee at the Closing.

11. A certified copy of this Order may be filed with the appropriate clerk or other official or similar person or institution and/or recorded with the recorder or other official or similar person or institution to act to cancel any of the Liens, Claims, and other encumbrances of record.

12. If any person or entity which has filed statements or other documents or agreements evidencing Liens on, Claims against, or interests in, all or any portion of the Stock shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to Purchaser for the purpose of documenting the release of all Liens or Claims, which the person or entity has asserted or may assert with respect to all or any portion of the Stock, the Debtor is hereby authorized and directed, and Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Stock.

13. This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Acquisition Agreement.

**Other Provisions**

14. Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Purchaser, its successors and assigns, or the Stock, with respect to any (a) Lien or Claim arising under, out of, in connection with or in any way relating to the Debtor, Purchaser, the Stock, or the operation of the Stock prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors or assigns, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Purchaser, its successors, assets, or properties; (iii) creating, perfecting, or enforcing any Lien or Claim against Purchaser, its successors or assigns, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) subject to the full and continued exercise of jurisdiction and authority by applicable bank regulatory agencies, commissions or bodies, revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate Jefferson Bank or conduct any of the businesses operated by Jefferson Bank.

15. Except as provided in the Acquisition Agreement, Purchaser shall not have any liability or other obligation of the Debtor arising under or related to any of the Stock. Without limiting the generality of the foregoing, Purchaser shall not be liable for any claims against the Debtor or any of its predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the Debtor's use and ownership of the Stock prior to the Closing. Purchaser has given substantial consideration under the Acquisition Agreement for the benefit of the holders of any Liens or Claims. The consideration given by Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of Purchaser, which releases shall be deemed to have been given in favor of Purchaser by all holders of Liens or Claims against or interests in the Debtor or any of the Stock.

16. The transactions contemplated by the Acquisition Agreement are undertaken by Purchaser without collusion and in good faith, as that term is defined in § 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and such Sale are duly stayed pending such appeal. Purchaser is a good faith buyer within the meaning of § 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of § 363(m) of the Bankruptcy Code.

17. The consideration to be provided by the Purchaser pursuant to the Acquisition Agreement is fair and reasonable, and the Sale may not be avoided under § 363(n) of the Bankruptcy Code.

18. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) this Bankruptcy Case, (ii) any subsequent chapter 7 case into which the Bankruptcy Case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Acquisition Agreement or the terms of this Order.

19. Pursuant to Bankruptcy Rules 7062, 9014, and 6004(h), this Order shall be effective immediately upon entry, and the Debtor and Purchaser is authorized to close the Sale immediately upon entry of this Order.

20. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

21. There are no brokers involved in consummating the Sale and no brokers' commissions are due, provided however, nothing herein shall preclude compensation to Commerce pursuant to § § 330 and 331 for compensation for services rendered in connection with the Sale or the assertion of a Claim by Keefe Bruyette and Woods.

22. The failure specifically to include any particular provision of the Acquisition Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Acquisition Agreement be authorized and approved in its entirety.

23. The Acquisition Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance

with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

24. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Acquisition Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which the Debtor is a party or which have been assigned by the Debtor to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

25. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Bankruptcy Case, the terms of this Order shall govern.

###